

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-10-00156-CR

_____

RANDY LEE WILLIAMS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th Judicial District Court
Hunt County, Texas
Trial Court No. 26,316

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Randy Lee Williams was found guilty by a jury of aggravated assault causing serious bodily injury to Dennis Eubanks, this being enhanced by prior felony convictions to a first-degree felony. After having been sentenced to fifty years' imprisonment, Williams has appealed.

The incident giving rise to the charges occurred at the house of a mutual friend of Williams and Eubanks, Mike Lane. Williams had once resided in the house with Lane, and Eubanks was then currently residing in a room there. Something of a celebration or party was planned and it was attended by Williams, Eubanks, Lane, and Lisa Spurgeon, Lane's girlfriend. Williams had brought alcoholic beverages to the gathering. During the course of the occasion, a disagreement arose between Williams and Eubanks. Eubanks approached Williams and, pointing a bottle at him, told Williams to "mind his own business." Williams responded by striking Eubanks, knocking him to the floor; as Eubanks lay on the floor, Williams continued to repeatedly strike Eubanks.

As a result of this, Eubanks suffered severe facial injuries, including a broken nose and multiple breaks and shatters in facial bones, rendering his mid-face unstable.[1] Dr. Thomas Sharp[2] testified that Eubanks had a LaFort III (a "very severe" facial fracture). Sharp went on to relate that Eubanks suffered from comminuted, or shattered, "extensive maxillofacial bone fractures,"

---

[1]Dr. Sharp, the attending emergency room physician who treated Eubanks at Hunt Regional Hospital, explained that a face is stable if it does not move, even though it may have fractures.

[2]After a CAT scan was performed, Eubanks was transferred to Parkland Hospital in Dallas, where the reconstructive surgery was performed on Eubanks.

2

"[c]omminuted fractures of the orbital floor, bilaterally," "maxillary sinus fractures," and "[f]racture of the lateral pterygoid plates, bilaterally." Some of the hardware installed to deal with the injuries sustained by Eubanks has been removed, but some metal hardware installed in Eubanks' face is permanent.

Williams raises two issues on appeal. First, Williams argues the evidence is insufficient for the jury to conclude beyond a reasonable doubt that Williams inflicted serious bodily injury. Second, Williams argues the evidence is insufficient to reject Williams' self-defense justification beyond a reasonable doubt.

**The Evidence of a Serious Bodily Injury Is Sufficient**

Williams argues, in his first issue, the evidence is insufficient to support a finding of serious bodily injury maintaining that Eubanks did not suffer any lasting limitations on any life functions. The State argues the evidence is sufficient because of the serious degree of the injuries sustained or due to the protracted impairment of Eubanks' ability to eat.

In reviewing the evidence for sufficiency, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010) (plurality op.). A proper application of the *Jackson v. Virginia* legal sufficiency standard is as exacting a standard as any factual sufficiency standard. *Brooks*, 323 S.W.3d at 906. Legal sufficiency is judged not by

3

the quantity of evidence, but by the quality of the evidence and the level of certainty it engenders in the fact-finder's mind. *Id*. at 917–18 (Cochran, J., concurring). We are directed to subject challenges to the sufficiency of the evidence to the hypothetically-correct jury charge analysis. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

Under the hypothetically-correct jury charge standard, the State was obligated to prove Williams intentionally or knowingly[3] caused serious bodily injury to Eubanks. *See* TEX. PENAL CODE ANN. §§ 22.01, 22.02 (Vernon Supp. 2010). The Texas Penal Code defines "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46) (Vernon Supp. 2010).

In such a prosecution, it is the burden of the State to prove that a serious bodily injury occurred. *Williams v. State*, 696 S.W.2d 896, 898 (Tex. Crim. App. 1985) (concluding State failed to establish gunshot wounds were serious bodily injuries where no surgery occurred and bullets were left in victim). The State does not argue that the injury created a substantial risk of death. The issue in this case is whether the injury caused serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ.

---

[3]The indictment alleged Williams did "intentionally or knowingly cause serious bodily inury to Dennis Eubanks by striking him in the face with his hand or hands." The State is bound by its allegations that Williams acted intentionally or knowingly. *See Gollihar v. State*, 46 S.W.3d 243, 254 (Tex. Crim. App. 2001); *Malik*, 953 S.W.2d 240; *see also Curry v. State*, 30 S.W.3d 394 (Tex. Crim. App. 2000).

When considering whether an injury is a serious bodily injury, our inquiry is focused on "the disfiguring and impairing quality of the bodily injury as it was inflicted, not after the effects had been ameliorated or exacerbated by other actions such as medical treatment." *Brown v. State*, 605 S.W.2d 572, 575 (Tex. Crim. App. [Panel Op.] 1980); *Nash v. State*, 123 S.W.3d 534, 539 (Tex. App.—Fort Worth 2003, pet. ref'd). No wound constitutes a per se "serious bodily injury." *See Moore v. State*, 739 S.W.2d 347, 352 (Tex. Crim. App. 1987). Whether an injury qualifies as "serious bodily injury" must be determined on a case-by-case basis. *Moore*, 739 S.W.2d at 352; *Wilson v. State*, 139 S.W.3d 104, 106 (Tex. App.—Texarkana 2004, pet. ref'd). We note the State must establish a serious bodily injury was actually inflicted; it is not sufficient to prove a "hypothetical or mere possibility" of a serious bodily injury. *Moore*, 739 S.W.2d at 352. *Moore* prohibits the State from attempting "to transform a minor injury into a serious bodily injury through the use of speculative testimony about what might have occurred had the minor injury not been medically treated." *Moore v. State*, 802 S.W.2d 367, 370 (Tex. App.—Dallas 1990, pet. ref'd).

Although the record does contain some evidence of disfigurement,[4] the record clearly contains sufficient evidence for the jury to conclude that the significant impairment of the function

---

[4]The record contains some evidence that Eubanks would have been seriously and permanently disfigured absent medical treatment. Dr. Sharp testified Eubanks' mid-face was unstable and although Eubanks' mandible was intact, "a lot of the bones of the face were fractured." When asked, "[W]hat would happen" if Eubanks did not receive surgery, Dr. Sharp responded that the injury "possibly could have had a malocclusion of his - of his – of his bite, okay, which could have affected his chewing and everything else down the road." Dr. Sharp also testified that the injury "could affect his breathing [through] his nasal cavities" and that he would "have a hard time breathing." Because the evidence is clearly sufficient to establish protracted impairment, it is not necessary for this Court to decide

5

of Eubanks' jaw for four to five months constituted a protracted impairment of a bodily function. Dr. Sharp testified "for any bone to heal, it has to be set . . . [a] lot of times they will wire that jaw shut." Eubanks testified that Williams broke his jaw,[5] his nose, and shattered a number of his facial bones. Eubanks had to have his jaw wired shut and was on a liquid diet for approximately four to five months. Dr. Sharp testified it would be standard procedure for a patient to have his jaw wired shut and to be placed on a liquid diet consisting of "[s]omething that's very soft, barely chewable. We're talking about soups." At the time of trial (which occurred approximately a year after the assault), Eubanks still was prevented by his injuries from eating hard food, such as steaks.[6]

This Court has held that an impairment that has lasted four months is protracted. *Kenney v. State*, 750 S.W.2d 10, 12 (Tex. App.—Texarkana 1988, pet. ref'd) (citing *Williams v. State*, 575 S.W.2d 30 (Tex. Crim. App. 1979) (impairment of arm for three months was "protracted")). Under the circumstances of this case, a rational juror could have concluded, beyond a reasonable doubt, that Eubanks suffered a protracted impairment of the use of his jaw. The evidence of a serious bodily injury is sufficient.

---

whether the evidence is sufficient to establish Eubanks would have been permanently disfigured without medical treatment.

[5] Mandible refers to the lower jawbone. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1093 (30th ed. 2003). The record suggests Eubanks' upper jaw may have been broken, but it is not clear concerning whether another part of Eubanks' jaw was broken. Dr. Sharp testified Eubanks' facial fractures would make it difficult to chew "[j]ust like if you had a mandible fracture . . . ."

[6] Eubanks was scheduled for surgery to repair his teeth damaged in the assault.

**There Is Sufficient Evidence that Williams Did Not Act in Self-Defense**

Williams argues, in his second point of error, that the evidence is insufficient to support the jury's rejection of his claim of self-defense. Under Williams' account of the incident, Eubanks threw a bottle at Williams, fully aware that Williams had previously had surgery to his brain.[7] Williams argues that under the circumstances, a rational juror would have reasonable doubt concerning whether Williams reasonably believed that the force he used against Eubanks was immediately necessary to protect himself against unlawful force. The State argues[8] that Williams provoked Eubanks or, alternatively, the jury could have concluded, beyond a reasonable doubt, that Eubanks did not use or threaten unlawful force. We agree with the State that a rational juror could have concluded that Williams lacked a reasonable belief that force was immediately necessary. It is not necessary for us to address the State's alternative argument that Williams provoked Eubanks and, therefore, waived his right to the self-defense justification.[9]

---

[7]Eubanks testified he was aware that Williams had previously undergone surgery for a brain aneurysm. When asked whether he was aware that Williams was "very sensitive about his head," Eubanks responded, "I don't know." Williams argues that he had been warned that additional head injuries could aggravate his condition.

[8]We note the State argues that error was not preserved because Williams did not object to the charge on provocation. An error concerning jury charge error, if it had been raised, would be reviewed under *Almanza v. State*, 686 S.W.2d 157, 173 (Tex. Crim. App. 1984) (op. on reh'g). Williams, though, has not raised any issue concerning jury charge error; rather, he raised legal sufficiency. "[A] claim regarding sufficiency of the evidence need not be preserved for appellate review at the trial level, and it is not forfeited by the failure to do so." *Moff v. State*, 131 S.W.3d 485, 489 (Tex. Crim. App. 2004).

[9]The self-defense justification is not available if the actor provoked the other's use or attempted use of unlawful force. TEX. PENAL CODE ANN. § 9.31(b)(4) (Vernon Supp. 2010); *Smith v. State*, 965 S.W.2d 509, 514 (Tex. Crim. App. 1998). The trial court instructed the jury on provocation. The State argues Williams provoked Eubanks by interrupting a private conversation. We decline to express any opinion concerning whether a rational juror could have concluded Williams provoked Eubanks.

The elements of self-defense are contained in Section 9.31 of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 9.31(a) (Vernon Supp. 2010). Section 9.31 provides in pertinent part:

> (a) Except as provided in Subsection (b), a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force . . . .
>
> (b) The use of force against another is not justified:
>
> > (1) in response to verbal provocation alone
> >
> > . . . .
> >
> > (4) if the actor provoked the other's use or attempted use of unlawful force . . . .

TEX. PENAL CODE ANN. § 9.31 (Vernon Supp. 2010). A "reasonable belief" is "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor.'' TEX. PENAL CODE ANN. § 1.07(a)(42) (Vernon Supp. 2010); *see Werner v. State*, 711 S.W.2d 639, 645 (Tex. Crim. App. 1986).

In raising the justification of self-defense, a defendant bears the burden of production, which requires the production of some evidence that supports the particular justification. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). Once the defendant produces some evidence, the State then bears the burden of persuasion to disprove the self-defense claim beyond a reasonable doubt. *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 913–14. The burden of persuasion does not require the production

8

of evidence, but rather only requires that the State persuade the jury beyond a reasonable doubt that the defendant did not act in self-defense. *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 913–14; *Kelley v. State*, 968 S.W.2d 395, 399 (Tex. App.—Tyler 1998, no pet.). A jury verdict of guilt results in an implicit finding against the defensive theory. *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 914.

Although the State argues that there is no evidence "the bottle was actually used in a threatening manner towards" Williams, the record does contain some evidence that Williams was acting in self-defense. Spurgeon testified that the day after the incident, Williams had told her that Eubanks had thrown a bottle at him that evening.[10] However, neither Lane nor Spurgeon observed the escalation of the conflict from verbal disagreement into physical violence. Thus, neither witness could testify concerning whether the bottle was thrown. While this is some evidence Williams acted in self-defense, a rational juror could have concluded Williams did not act in self-defense.

A rational juror could have chosen to disbelieve Williams' self-serving out-of-court statements and concluded, beyond a reasonable doubt, that Williams used force in response to only verbal provocation. A jury can choose to disbelieve a witness, even when that witness' testimony is uncontradicted. *Henderson v. State*, 29 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.]

---

[10]Although hearsay, this evidence was not objected to and, therefore, evidence. When reviewing the sufficiency of the evidence, we must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see Neal v. State*, 256 S.W.3d 264, 277 (Tex. Crim. App. 2008).

9

2000, pet. ref'd). The use of force "is not justified . . . in response to verbal provocation alone." TEX. PENAL CODE ANN. § 9.31(b)(1) (Vernon Supp. 2010). Eubanks testified that he did not strike Williams with his hand or with the bottle he had in his hand. Spurgeon testified, because the bottle ended up on the floor beside the bed after the fight, that she did not believe that the bottle had been thrown at Williams. Both Spurgeon and Lane testified they saw no visible injuries to Williams after the assault. Eubanks testified that he and Williams had engaged in "verbal disagreements" in the past, but these disagreements had never escalated to "fists being used." Lane testified he had seen Eubanks and Williams have verbal disagreements before, but had never seen the disagreements elevate to physical confrontation. The jury was entitled to believe Eubanks' statements of his version of the events over Williams' version. A rational juror could have concluded, beyond a reasonable doubt, that Williams lacked a reasonable belief that force was immediately necessary to protect himself from the use or attempted use of unlawful force. The evidence is sufficient to support the jury's rejection of self-defense. Williams' second issue is overruled.

For the reasons stated, we affirm.


Bailey C. Moseley
Justice

Date Submitted: February 28, 2011

10

Date Decided:          March 9, 2011

Do Not Publish